### SPRINGER v. STATE.

[92 South. 638, No. 22447.]

1. HOMICIDE. *Manslaughter charge not error, where parties had engaged in fight immediately prior to killing done in heat of passion and without malice.*

Where deceased and the defendant had engaged in a fight immediately before the killing and were separated, and the difficulty was renewed by the defendant in a few minutes, while still in anger engendered by the fight, it was not error for the court to instruct the jury at the request of the state that the jury might return a verdict of guilty of manslaughter, if the killing was done wrongfully in the heat of passion and without malice.

2. HOMICIDE. *Accused cannot claim benefit of disease-infected wound as contributory to death.*

Where an accused inflicted a wound on the deceased, which was infected with disease germs, resulting in a disease which contributed to the death, it was not error for the court to refuse to instruct the jury, for the defendant, "You must return a verdict of not guilty, unless it appears from the evidence beyond all reasonable doubt that the

disease of meningitis was not the sole cause of decedent's death." The wound being wrongfully inflicted by the defendant, and being the cause of the infection, the defendant cannot claim the benefit of it as a contributory cause of death.

3. CRIMINAL LAW. *Argument by accused in murder charge as to penalty for manslaughter held improper.*

In a criminal case, where the jury has no power to fix the punishment, it is improper to state in argument what punishment may be inflicted; and it was not error for the court in a manslaughter case to sustain an objection to argument by the defendant that the state would be pleased with a manslaughter verdict, and could send the accused to the penitentiary for a term of years.

4. HOMICIDE. *Where deceased was killed by brick thrown by accused, evidence of disparity of their size and strength inadmissible.*

In a trial for homicide, where the defendant threw a brick at, and struck, deceased, when they were some distance apart, from which blow deceased died, evidence of disparity of size and strength was improper and inadmissible, and the court committed no error in excluding it from the jury.

APPEAL from circuit court of Lee county.

HON. C. P. LONG, Judge.

Elmer Springer was convicted of manslaughter, and he appeals. Affirmed.

*W. A. Blair,* for appellant.

The court erred in giving a manslaughter charge as by the state's evidence by which they were supposed to convict, shows that it was a clear case of unjustifiable murder, willful and cold blooded, committed at a time when the deceased was doing absolutely nothing to the defendant and a manslaughter charge was certainly improper.

We realize that in the case of *Abney* v. *State,* 86 So. 341, the court has held that the district attorney should not, in a murder case, remind the jury, where a manslaughter charge is asked for and given to the state, that in event the jury convicted of manslaughter, the maximum penalty would be twenty years and the minimum penalty absolutely in the discretion of the court; but we see no reason

why this rule laid down should apply to counsel for the defendant arguing to the jury that the state would be delighted at a manslaughter verdict and send the defendant to the penitentiary for a term of years as was done by the defendant in this case and objected to by the state's attorney which objection was sustained by the court as shown by special bill of exceptions as shown on page 47 of this record.

The court erred in giving the state this manslaughter charge. By the evidence of the state, this defendant was guilty of murder, cold blooded; by the evidence of the defendant, he should have been acquitted. There is no halfway ground. The manslaughter charge was improper, it simply gave the jury a chance to compromise in a poor negro's case. *Parker v. State,* 58 So. 978; *Horn* v. *State,* 60 So. 1011.

The court refused to allow the defendant to show the difference in size of the deceased and the defendant who is an eighteen-year-old boy. If the defendant had been permitted to show this, to call the attention of the jury to this, the verdict would have been different. *Hester* v. *State,* 70 So. 881.

It is contended, however, that even though the granting of this instruction is error, it is harmless error; that the verdict of the jury is favorable to defendant, and under the ruling of this court in *Huston* v. *State,* 105 Miss. 413, 62 So. 421, the case should and must be affirmed. The announcement or ruling of the court in the Houston case was a new and radical departure from the previous holdings of our court. Our court, in *Virgil* v. *State,* 63 Miss. 320, *Parker* v. *State,* 102 Miss. 113, 58 So. 979, and numerous other cases, had condemned in unmistakable terms the returning of a verdict of manslaughter in a case of this kind.

Instruction 16, refused by the court, is as follows: "The court charges the jury that you must return a verdict of not guilty unless it appear from the evidence beyond all reasonable doubt that the disease of meningitis was not the sole cause of decedent's death." In this connection, we

call the court's attention to the testimony of Dr. Green on pages 5 and 6 of the record, on cross-examination. Dr. Green testified that the wound was not a mortal wound and in this connection, we call the court's attention to the case of *Quinn* v. *State,* 64 So. 738, and quote from Chief Justice SMITH's opinion in that case as follows:

"Since the burden of proof is on the state throughout a criminal cause, and since guilt must always appear beyond a reasonable doubt before a conviction can be had, the court erred in instructing the jury that appellant is guilty of murder unless it clearly and certainly appears . . . that . . . disease disconnected from the wound, and not the wound itself, was the sole cause of his death" appellant being entitled to an acquittal unless it appeared from the evidence beyond a reasonable doubt that this disease was not the sole cause of his death, but that his death was caused or contributed to by the wound. The instruction is further erroneous in advising the jury in this connection that if the wound had not been given the party had not died. If the disease was the sole cause of the death, it cannot, of course, be said that if the wound had not been given the party had not died.

The court refused instruction 15 which was an exact copy of the instruction No. 4 in the case of *Blalack* v. *State,* 79 Miss. 517, which the court held as a proper instruction. We think the court's refusing instruction 15, which instruction is approved by the court in the Blalack case is reversible error. Likewise, instruction No. 2 in the *Blalack case,* 79 Miss. 519, which instruction the court says that the lower court erred in refusing, is a very similar one to our instruction No. 13, which was refused by the court.

In the case of *State* v. *Darling,* 97 S. W. 597, we quote the following: "The law guarantees to every man the right of self defense, and, if defendant killed Jeffress in the necessary defense of his person, he is not guilty. If, therefore, you find from the evidence that the defendant struck Jeffress with some instrument which resulted in the death

of said Jeffress and at the time defendant struck deceased he had good reason to believe, and did believe, from the conduct, manner, or appearance of deceased, that the deceased was about to inflict upon him some great personal injury, and defendant struck him for the purpose of averting such apprehended injury, then you must acquit defendant on the ground of self defense. In such case it is not necessary that the danger should have been real and about to fall. All that is necessary is that the defendant believed, and had good reason to believe, that such danger existed."

We respectfully submit that this case should be reversed.

*Wm. M. Hemingway*, assistant attorney-general, for the state.

This case does not fall within the rule of *Rester* v. *State*, because it is not clear that it was murder or self defense. There is ample evidence to support a manslaughter instruction and it cannot be said with any certainty that the jury was misled by the instruction. The state's evidence is clear that the appellant was in no danger when he threw the brick that caused the fatal injury. It was a sudden quarrel, each incident closely following the other. There was an objection to the exclusion of the evidence as to the size of the deceased.

While it is probable that this evidence should have been admitted when defendant offered it for the reason that the court had already admitted evidence (see page 9 of the transcript), that the deceased weighed one hundred and forty pounds, still there is nothing to indicate that the disparity in size and strength was great enough to have justified taking the life of the deceased. Furthermore, the testimony is that they were separated by about fifteen feet. There were parties present who had interfered to prevent a fight. Defendant would not have been helped any by the admission of the excluded testimony as to the size of the deceased, for the reason that nothing is shown as to the

size of the defendant. This case should be controlled by
*Waldrop* v. *State,* 98 Miss. 567, 54 So. 66. Of course the
jury could see the defendant and judge of his size. It is
difficult to see that the defendant is prejudiced by the ab-
sence of the testimony as to the size of the deceased, par-
ticularly when the defendant states that he was advancing
on him with a weapon. Page 31 of the transcript. There-
fore the size of the two parties would not have very much
weight in this case.

A reversal of this case is asked on the facts. It will be
unnecessary to enter into that to any great extent. The
jury settled that question adversely to the defendant. They
had the testimony of several witnesses to sustain their ver-
dict if it be admitted that the deceased was the aggressor.
The jury was the judge of the credibility of the witness and
the weight of the evidence, and they decided that there was
occasion to use any weapon. The credibility of the wit-
nesses was submitted to the jury on proper instruction.

The appellant complains of the refusal of instructions
13 to 17 inclusive. Instruction No. 13 is covered by in-
struction No. 12, which presents the same point. Instruc-
tion No. 7 also presents the same evidence. Instruction
No. 6 is very broad in its terms. The same reason applies
to instructions 14 and 15. Instruction No. 17 is covered
by other instructions to a certain extent, but has no foun-
dation in the evidence and could not be the law that the
defendant had the right to presume an attack and to act
upon his reasonable apprehension of danger. *Scott* v. *State,*
56 Miss. 387; *Spivey* v. *State,* 58 Miss. 585.

It is further urged that the court erred in refusing in-
struction No. 16. There was no evidence that the disease of
meningitis was the 'sole cause of deceased's death. Dr.
Green testified that his death was caused by the blow on
the head. Consequently there was no evidence upon which
to base this instruction.

As to the 7th and 8th assignment of error, which are
included in the special bill of exceptions, the court acted
properly in cautioning the jury as to the weight to be at-

tached to the remarks of counsel and remove any objection which might have been urged to the remarks of counsel for the state.

The state contends that the case of *Quinn* v. *State,* cited in appellant's brief, is sufficient to justify the refusal of instruction No. 16.    Respectfully submitted.

ETHRIDGE, J., delivered the opinion of the court.

Elmer Springer was indicted for the murder of Arch Larkin, and tried, and convicted of manslaughter, and sentenced to ten years in the state penitentiary, from which judgment he prosecutes this appeal.

The appellant and the deceased had a difficulty on the premises of one Neal King, and engaged in a fight.    They were separated in the house, and the appellant was ordered to leave the house by King, and went into the yard, and picked up an ax, and started to return to the house, and King ordered him to put the ax down, and, if he couldn't do better than that, to leave.    At about this time the deceased came out of the house, and according to some of the state's witnesses was leaving the place, and according to others the deceased said to the appellant that, if he wanted to fight, to come away from the house, when the appellant picked up a half brick, threw it at deceased, struck him on the side of the head, and knocked him senseless, and then ran off.    According to the defendant, the deceased was coming upon him with a poker in his hand, or something else, and he threw the brick to prevent him from assaulting him.    After the deceased was struck, on the following day, a physician was sent for, who attended the deceased, and who found him suffering intense pain in the head.    He made an examination of the wound with his fingers, but could find no fracture.    He continued to visit the deceased once or twice a day until about Wednesday, when he seemed to be better, and he did not visit him again until Friday, when he found him suffering intensely, and found symptoms of meningitis.    He testified that in his opinion the meningitis was caused by the germs enter-

ing the wound on his head and thereby infecting him, and that but for the wound he would not have been infected by such germs. He further testified that he thought meningitis was the immediate factor producing the death. According to a number of eyewitnesses, the appellant at the time of the throwing of the brick was very angry from the fight in the house, in which he seems to have been worsted.

The state procured a manslaughter instruction, which it is contended constitutes error, and it was given over the objection of the defendant. The defendant obtained twelve instructions, and was refused five. We think the refused instructions, with the exception of No. 16, which is one of the refused instructions, are covered by the instructions given. The sixteenth instruction requested, which was refused, reads as follows:

"The court charges the jury that you must return a verdict of not guilty, unless it appears from the evidence beyond all reasonable doubt that the disease of meningitis was not the sole cause of decedent's death."

In the course of the defendant's argument the attorney for the defendant stated that the defendant was either guilty of murder or should be acquitted:

"We do not want the jury to bring in any manslaughter verdict; that the district attorney had asked for a manslaughter, and the state would be tickled to death to secure a verdict of manslaughter, and send this man to the penitentiary for a term of years."

To which statement in reference to punishment the district attorney objected, and the court ruled that it was an improper argument for the attorney to state in his argument what the punishment might be for manslaughter, and instructed the jury to disregard such statements, as they had nothing to do with fixing the penalty in this case, which ruling is assigned for error.

In the trial one witness for the state stated that the deceased would weigh about one hundred and forty pounds, and gave his age to the jury. In the defendant's evidence one witnesses testified that the deceased would weigh about

one hundred and eighty pounds, but the court sent the jury out, and then stated to the attorneys that nothing had developed so far that would warrant evidence of the difference as to size and strength of the two parties, the defendant and the deceased, and ruled out the evidence with reference to the size of the deceased. There was no proof as to the size or weight of the defendant, but he appears to have been eighteen or nineteen years of age, and this ruling of the court is assigned for error.

We think the manslaughter instruction was proper, because it clearly appears that the parties engaged in a fight immediately preceding, and there is ample testimony for the jury to believe that the deceased was not assaulting or attempting to assault the defendant at the time of the throwing of the brick. This is not a case of murder or nothing, and it is probable that the guilt was really manslaughter, and not murder. We do not think that the court erred in refusing instruction No. 16 under the facts in this record. The only testimony bearing on meningitis is that of the physician, who testifies that meningitis was caused by the wound becoming infected with the germs, and if there had been no wound there would have been no meningitis. Wherever disease not originating from the wound inflicted by defendant is a prime cause of death, being independent of the act of the defendant, the defendant will be entitled to have the charge requested; but where the disease is caused by the wound, which wound is produced by the act of the defendant, he is not entitled to this instruction. In other words, he is not permitted to inflict a wound which results in death by reason of becoming infected, and then to claim that he is not responsible for the death which he sets in motion by his unlawful act.

We do not think there is any merit in the objections taken to the court's ruling to the defendant's argument. This court has several times ruled that it was improper for an attorney to comment on the punishment which the law visited upon a defendant for the offense, where the jury had nothing to do with fixing the punishment, and the jury

has nothing to do with that subject on a conviction of manslaughter. There are cases in which the jury have the right to fix or recommend punishment; but this is not one of those cases, and it is not error for the court to disallow argument upon that subject.

We also think there is no merit in the assignment that the court erred in ruling out the evidence in the disparity of the relative sizes of defendant and the deceased. The distance between them was too great for the defendant to be in such danger from the superior prowess of the deceased as to inflict a deadly wound upon him. The other assignments of error are without merit, and the judgment is affirmed.

*Affirmed.*